UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

DDR DEL SOL LLC, S.E., Successor in interest to BY Ventures, S.E.,

    Plaintiff,

v.

CAJUN GRILL OF AMERICA, INC.,

    Defendant.

Civil No. 3:15-CV-01111 (JAF)

**OPINION AND ORDER**

**I.**
**Introduction**

This matter stems from a breach of contract between a landlord, Plaintiff DDR del Sol LLC, S.E. ("DDR"), and its tenant, IRMG Puerto Rico ("IRMG"). Plaintiff filed suit against IRMG in the Court of First Instance to collect money owed under a lease contract entered into in 1998 and modified on August 28, 2009. That matter remains pending in the Court of First Instance. The defendant here, Cajun and Grill of America, Inc. ("Cajun"), is the guarantor of the modified lease between Plaintiff and IRMG in 2009. Plaintiff originally filed suit against Cajun in the Court of First Instance in Bayamón, and Cajun removed the matter to this court. (ECF No. 1).

Plaintiff moves for summary judgment (ECF No. 18), arguing that IRMG and Cajun are duly liable under the agreement for $227,434.22 in past due rent plus interest, fees, and attorneys' fees and costs. Cajun argues that the 2011 lease agreement entered into between Plaintiff and IRMG terminated Cajun's obligations as guarantor of IRMG's

debt. (ECF No. 30). Plaintiff replied in support of its motion. (ECF No. 41). For the following reasons, Plaintiff's Motion for Summary Judgment is DENIED.

## II.
## Standard For Summary Judgment

Federal Rule of Civil Procedure 56 states, in pertinent part, that a court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Santiago—Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000). The court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

## III.
## Facts

On November 24, 1998, BY Ventures, S.E., and KCG of Plaza del Sol, Inc., entered into a lease agreement for food court space at Plaza del Sol in Bayamón (hereinafter, the "1998 Lease"). KCG of Plaza del Sol, Inc. assigned the lease to IRMG with the consent of BY Ventures, S.E. on December 20, 2002. On August 28, 2009, BY Ventures, S.E. and IRMG signed an amendment to the 1998 Lease, to, inter alia, extend its term for ten additional years, due to expire on January 31, 2019. (ECF No. 15-4,

hereinafter the "2009 Modification"). In the 2009 Modification, IRMG agreed to pay DDR certain monies that DDR claimed were due. At the time of the modification, the total amount that IRMG agreed to pay totaled $368,812 and was to be paid in monthly installments of $3,073.43. (ECF No. 15-4 at 8). Cajun signed as joint guarantor of IRMG's payment under the amendment. (ECF No. 15-4 at 13). Plaintiff herein is BY Ventures, S.E.'s successor in interest as landlord in the contracts at issue.

At some point in 2011, Plaintiff relocated the area of the food court to the second level of Plaza del Sol shopping center. Pursuant to Section 10 of the 2009 Modification, Plaintiff was solely responsible for all costs associated with the relocation of the leased premises to the new food court that it set up. Such relocation costs totaled the amount of $355,202.93.

On December 28, 2011, Plaintiff and IRMG entered into an agreement entitled "Lease" (hereinafter, the "2011 Lease") for the operation of Kelly's Cajun Grill & Yeung's Lotus in the second level of the shopping center. The 2011 Lease expressly terminated the 1998 Lease, yet it exempted from such termination "payment of any Rent or Additional Rent which have accrued, or have been incurred by Landlord, but not invoiced to or paid by Tenant as of such date, but for which Tenant is liable under the Prior Lease, and for any indemnities set forth in the Prior Lease[.]" (ECF No. 15-1 at 28).

On November 26, 2012, IRMG ceased operations in the 1,623 square feet space leased on the first floor of the shopping center. On December 6, 2012, IRMG opened in the new space comprising of 1,171 square feet on the second level shopping center. IRMG made its last payment under the terminated 1998 Lease in November of 2012. On

December 6, 2012, when IRMG opened its doors in the new space on the second floor of the shopping center, there were at least 74 outstanding monthly installments remaining under Schedule B of the 2009 Modification, totaling $227,433.82.

The questions before the court are whether the 2011 Lease is an extinctive novation of the 1998 Lease and its 2009 Modification and, if so, whether it extinguishes Cajun's obligation as Guarantor of IRMG's debt to Plaintiff.

## IV.
## Law And Analysis

This court previously discussed the law in Puerto Rico regarding the novation of an existing contract in *Web Service Group, Ltd. v. Ramallo Bros. Printing, Inc.*:

> The Civil Code of Puerto Rico provides that subsequent agreements entered into between contracting parties may modify or extinguish their previous obligations. "Novation" can be accomplished by either changing the object and/or the principal conditions of existing obligations. 31 L.P.R.A. § 3241 (2004). "The Civil Code of Puerto Rico recognizes two types of novations: extinctive and modificatory." *Nieves Domenech v. Dymax Corp.*, 952 F.Supp. 57, 61 (D.P.R.1996) (citing *Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378, 390–91 (1973); *Blansini v. Beech–Nut Life Savers*, 104 D.P.R. 570, 580 (1976)). "An extinctive novation extinguishes the old obligation and creates a new one. In contrast, a modificatory novation simply modifies, but does not extinguish, the original agreement." *Id*. (citations omitted). For an extinctive novation to occur, the parties must expressly declare their intention that the new obligation extinguishes the previous one. *Marina Indus. Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64, 70–77 (1983); *Nieves–Domenech*, 952 F.Supp. at 61; *Ballester Hermanos v. Campbell Soup Co.*, 797 F.Supp. 103, 107 (D.P.R.1992). In the absence of an express declaration, novation is appropriate only when the two obligations are absolutely incompatible. *Francisco Garraton, Inc. v. Lanman & Kemp–Barclay & Co.*, 559 F.Supp. 405, 407 (D.P.R.1983). In other words, there must be a radical change in the nature between the new and old obligation so as to make them mutually exclusive. *G. & J., Inc. v. Dore Rice Mill, Inc.*, 108 D.P.R. 89 (1978).

336 F.Supp.2d 179, 182-83 (D.P.R. 2004).

In order for an obligation to be extinguished and substituted by another, "it is necessary that it should be so expressly declared, or that the old and new be incompatible in all points." 31 L.P.R.A. § 3242. There are clearly two ways in which an extinctive novation may occur: 1) by express declaration or 2) where the two obligations are completely incompatible. Defendant bears the burden of proof that the 2011 Lease is an extinctive novation. *See Union Mut. Life Ins. Co. v. Chrysler Corp.*, 793 F.2d 1, 13 (1st Cir.1986) (novation is an affirmative defense within scope of Fed. R. Civ. P. 8(c)); *see also Nieves Domenech*, 952 F.Supp. at 62–64 (discussing "extinctive novation" claim under Puerto Rico law). "The Court has warned that the particular facts of each case should be carefully examined to determine whether or not extinctive novation exists for the termination of the principal obligation carries with it the extinction of the guarantees and other accessory rights." *Francisco Garraton, Inc. v. Lanman & Kemp-Barclay & Co. Inc.*, 559 F.Supp. 405, 407 (1983) (citation omitted).

The 2011 Lease is an extinctive novation under Puerto Rico law. Section XXV.CC of the 2011 Lease states:

> Tenant is currently occupying other premises in the Shopping Center (the "Original Premises") pursuant to a Lease dated November 24, 1998 (as further amended) between Landlord's predecessor-in-interest and Tenant's predecessor-in-interest (hereinafter referred to as the "Prior Lease). Notwithstanding anything in the Prior Lease to the contrary, *the Prior Lease shall terminate as of 11:59 p.m. on the date preceding the day Landlord delivers possession of the Premises*, except that Tenant shall remain obligated to Landlord for payment of any Rent or Additional Rent which have accrued, or have been incurred by Landlord, but not invoiced to or paid by Tenant as of such date, but for which Tenant is liable under the Prior Lease, and for any indemnities set forth in the Prior Lease and any such costs or damages shall be deemed Additional Rent under this Lease. If

> this Lease is not consummated for any reason, then the Prior Lease shall remain in full force and effect until its expiration pursuant to its terms.
>
> A default under the Prior Lease shall constitute a default under this Lease for which Landlord may exercise any of its remedies under this Lease. In the event the Prior Lease is terminated as a result of the default of Tenant, then upon such termination of the Prior Lease, this Lease shall be terminated as if Tenant shall have committed default under this Lease and Landlord shall be entitled to damages and other sums as provided in this Lease. In the event the Tenant's right to possession under the Prior Lease shall be terminated as a result of the default of Tenant hereunder, then upon such termination, Tenant's right to possession under this Lease shall terminate as if Tenant committed a default under this Lease and Landlord shall be entitled to damages, deficiencies and other sums as provided in this Lease.

(ECF No. 15-1 at 28-29 (emphasis added)).

Section XXV.CC expressly terminates the Prior Lease upon IRMG's possession of the new premises. DDR argues, however, that the payment plan in Schedule B of the 2009 Modification is a separate agreement incorporated into the modification but that the payment plan remained even after the 2011 Lease specifically terminated the 1998 Lease, as amended. The court disagrees. The payment plan in Schedule B of the 2009 Modification would not stand alone as a separate agreement. Additionally, neither would the 2009 Modification as a whole. The 2011 Lease defines "Prior Lease" as "a Lease dated November 24, 1998 (as further amended), between Landlord's predecessor-in-interest and Tenant's predecessor in interest[.]" The 2009 Modification, including the payment plan in Schedule B, is an amendment to the 1998 Lease. The language of Section XXV.CC expressly terminates the 1998 Lease, which by definition includes the 2009 Modification.

However, excepted from the termination is IRMG's obligation for any accrued Rent or Additional Rent not invoiced to or paid by Tenant, but for which Tenant is liable under the Prior Lease, "and for any indemnities set forth in the Prior Lease...." Schedule A of the 2011 Lease sets forth the minimum amount that IRMG is obligated to pay to DDR each month regardless of the amount of sales. In addition, IRMG is obligated to pay Percentage Rent, which is based off the gross sales, that is in excess of the Minimum Rent payment. (ECF No. 15-1 at 4). Other amounts to be paid by IRMG pursuant to Articles V, VII, VIII, XXIV and XXVI include Taxes, Common Area Charge, utility charges that are not separately metered, fixed marketing charge, Food Court Marketing Charge, Food Court Operating Costs, and Insurance Expense.

The 2011 Lease defines "Additional Rent" as "Any amounts to be paid by Tenant to Landlord pursuant to the provisions of *this* Lease, whether such payments are periodic or recurring". (See ECF No. 15-1 at 26 (emphasis added)). Additionally "any Rent or Additional Rent which have accrued or have been incurred by Landlord, but not invoiced to or paid by Tenant, but for which Tenant is liable under the Prior Lease, and for any indemnities set forth in the Prior Lease and any such costs or damages" are deemed "Additional Rent" under the 2011 Lease. Thus, Additional Rent includes Percentage Rent, taxes, Common Area Charge, utility charges that are not separately metered, fixed marketing charge, Food Court Marketing Charge, Food Court Operating Costs, Insurance Expense, *and unpaid rent, additional rent, costs, and damages incurred under the 1998 Lease*.

We must then determine what is included in unpaid rent or additional rent under the 1998 Lease. The 2009 Modification extends the term of the 1998 Lease for an additional ten years and sets forth the Minimum Rent and other Rent obligations for the leased premises. It is undisputed that IRMG was up-to-date on all Rent obligations set forth in the 2009 Modification and its Schedule A. Additionally, the 2009 Modification includes an obligation for IRMG to make monthly payments pursuant to "Schedule B." Schedule B relates to delinquencies accrued under both the 1998 Lease and the "Suki Hana Lease" amounting to $368,812, to be paid over a ten-year period. It is unclear what part of the delinquent amount stems from the 1998 Lease versus the Suki Hana Lease. It is also unclear whether the delinquent amount from the 1998 Lease is for "Rent", "Additional Rent," or some other charges or fees. Neither the 1998 Lease nor the 2009 Modification defines "Additional Rent."

It is unclear whether the payment plan under Schedule B qualifies as "Rent or Additional Rent." Defendant Cajun argues that the payment plan terminated along with the rest of the 1998 Lease and its amendment. Cajun argues that IRMG only accepted DDR's wording for Section XXV.CC of the 2011 Lease because it released IRMG from the remaining $227,433.82 under the payment plan, as well as DDR from reimbursing the $355,202.93 in renovation costs. According to Cajun, the only obligations that survived the termination of the 1998 Lease did not involve the payment plan and, since no Rent or Additional Rent was due and owing, the 1998 Lease and its amendments terminated in their entirety upon IRMG's possession of the second floor space.

DDR argues that the payment plan and Cajun's Guaranty were not extinguished by the 2011 Lease. DDR argues that the payment plan did not novate the 1998 Lease, but created a separate obligation, incorporated into the 2009 Modification by reference. In support of its argument, DDR points to the conclusion reached by the local court in consolidated Civil Case Nos. D CD2014-2391 and D CD2014-0027, which allegedly found that the 2011 Lease did not extinguish the payment plan in the 2009 Modification. This court is not bound by the local court's decision, and has not, in fact, been provided an opportunity to even review the decision. As stated above, this court disagrees that the payment plan is a separate obligation independent from the 1998 Lease. Notably, DDR is silent as to why IRMG would have released it from its obligation to pay the $355,202.93 for renovation costs if there was not a reciprocal release of the outstanding balance under Schedule B.

By its terms, the 2011 Lease terminated the 1998 Lease *and its amendments*, which includes the 2009 Modification, with the exception of unpaid rent, additional rent, costs, and damages incurred under the 1998 Lease and its amendments. There is certainly a question of fact as to what makes up the delinquent amount in Schedule B: Is it unpaid Rent under the 1998 Lease? If so, then IRMG's obligation, and Cajun's Guaranty, to continue paying on the payment plan remain in effect. Is it unpaid rent under the Suki Hana Lease? If so, the amount represents accrued rent not subject to the 2011 Lease terms. Is it other charges and fees incurred under the 1998 Lease, the Suki Hana Lease, or both? If so, those other charges and fees are not "Additional Rent" under

the 1998 Lease and, therefore, the obligation to pay them is expressly extinguished by the 2011 Lease.

Because there exists a genuine question of material fact as to what makes up the balance of the delinquency in Schedule B, summary judgment is not proper. Plaintiff DDR's Motion for Summary Judgment is DENIED.

## V.
## Motion To Stay

Plaintiff DDR moved in its reply brief to stay the proceedings pending resolution of the local court case in the event this court denied its motion for summary judgment. (ECF No. 41 at 5). That motion is denied as it was improperly raised in the reply brief. Plaintiff DDR should, if necessary, file the appropriate motion as a separate request, in order to allow Defendant Cajun the opportunity to respond. However, the court advances that we do not favor stays of this nature.

## VI.
## Conclusion

For the above-stated reasons, the court finds that a genuine issue of material fact exists precluding summary judgment. Accordingly, Plaintiff DDR Del Sol LLC, S.E.'s motion for summary judgment (ECF NO. 18) is DENIED.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 26th day of October, 2015.

                                                                        S/José Antonio Fusté
                                                                        JOSE ANTONIO FUSTE
                                                                        U. S. DISTRICT JUDGE